IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIFFANY RITTER,                                    :
             *Plaintiff,*                        :
                                      :
    v.                                              :   CIVIL NO. 22-4897
                                        :
LEHIGH VALLEY HEALTH NETWORK,      :
             *Defendant.*                       :

**MEMORANDUM**

**Scott, J.**                                                                                **February 15, 2024**

Plaintiff Tiffany Ritter brings this action against her former employer, Defendant Lehigh Valley Health Network, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Specifically, Plaintiff alleges that Defendant violated these laws by failing to accommodate her request for a religious exemption to Defendant's COVID-19 vaccine mandate. Presently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 9), to which Plaintiff filed an Opposition (ECF No. 11). For the reasons set forth below, Defendant's Motion (ECF No. 9) will be granted and Plaintiff's Complaint with be dismissed with prejudice. An appropriate Order will follow.

I.      **BACKGROUND**

Plaintiff was hired by Defendant in 2015 as a Health and Wellness Coach. ECF No. 1 at 2 ¶ 5.[1] In this role, Plaintiff worked in an office where direct patient contact was not part of her job responsibilities. *Id.* Moreover, sometime in 2021, Plaintiff was transitioned to permanent work-from-home employment status by Defendant. *Id.*

_____

[1]      Because paragraph numbers are repeated in Plaintiff's Complaint, the Court is including both page numbers and paragraph numbers in its citations to avoid confusion.

In August 2021, Defendant implemented a policy mandating all employees be vaccinated against COVID-19. *Id.* at 2–3 ¶ 6. Under this policy, employees were required to provide proof of receipt of a first dose of a COVID-19 vaccine series, or otherwise submit a request for an exemption by September 15, 2021. *Id.* Plaintiff submitted a request to be exempt from the vaccine mandate on September 1, 2021. *See id.* at 3 ¶ 3; *see also id.* at 11, Ex. A. Her request stated she "ha[s] religious beliefs against taking vaccines." *See id.* at 3 ¶ 3; *see also id.* at 11, Ex. A.

Upon receipt of Plaintiff's request, Defendant's then-Deputy General Counsel for Litigation and Risk Management, Glenn Guanowsky, Esq., corresponded with Plaintiff and requested Plaintiff complete Defendant's enclosed Request for Religious Exemption Form "to the best of [her] ability" by September 10, 2021. *Id.* at 3 ¶ 4. Plaintiff responded to this correspondence indicating that she had questions regarding how Defendant wished for her to complete the form and what information, exactly, it sought from her. *Id.* Mr. Guanowsky responded to Plaintiff's question by stating, "[t]his is a question that is evaluated based on the applicable law. In order to maintain integrity of the review process, everyone is free to provide any and all information they believe will help to explain their belief." *Id.* Plaintiff responded requesting the applicable law be specified, to which Mr. Guanowsky replied "[t]he statutes and applicable caselaw interpreting those statutes. I am not going to provide additional detail." *Id.*

On September 10, 2021, Plaintiff submitted her completed Religious Exemption Form and enclosed a written statement explaining that she has a sincerely held religious belief against the use of the available COVID-19 vaccines. *Id.* at 4 ¶ 5; *see also id.* at 17, Ex. C. This submission is attached to Plaintiff's Complaint. *Id.*, Ex. C. In her submission, Plaintiff states, in pertinent part, that:

> I've been a born-again Christian for 16 years. I've attended and graduated from Christian schools, play on my churches [sic]

> Worship Team, and attend church regularly. I read the Bible, pray, and interact with God daily.
>
> I have prayed about how to respond to the COVID-19 vaccination directive, in light of my bio-individuality and religious beliefs. I sincerely believe my body is unique, made by and belongs to God and is the temple of His Holy Spirit. [citing Psalm 139:13-18, 1 Cor. 6:19-20, 1 Cor. 3:16, John 14:17]. . . .
>
> As part of my prayers, and time spent in God's Word through the Holy Bible, I have asked God for wisdom, guidance, discernment, and direction regarding the current COVID-19 vaccinations and mandates. As I have prayed about what I should do, the Holy Spirit has moved on my heart, and conscience that I must not accept the COVID-19 vaccines.
>
> Everything about these vaccines goes against my sense (the sense God has given me) of what is the right thing to do. . . .
>
> I believe God to be the ultimate authority over my life. John 17:2. If I were to go against the moving of the Holy Spirit, I would be sinning and violating the decision and direction God has given me. . . .

*Id.* at 22–23.

On September 16, 2021, Plaintiff received correspondence from Mr. Guanowsky, stating that her request had been reviewed and it was denied. *Id.* at 4 ¶ 6. The correspondence did not include an explanation for the denial. *Id.* Following this denial, Plaintiff requested to engage in a "proper interactive process" with Defendant concerning her request for a religious accommodation and did so by sending an email to Mr. Guanowsky and three other individuals on September 17, 2021. *Id.* at 4 ¶ 7. Within this email, Plaintiff requested reconsideration of her accommodation request as well as an explanation for the denial so she could "better understand" how to fill out Defendant's forms. *Id.* Just four minutes after sending this email, Plaintiff received a response from Mr. Guanowsky stating, "There is no appeal and there will be no further discussions on this topic . . . [t]he deadlines are fast approaching." *Id.*

Subsequently, on September 21, 2021, Plaintiff sent an email to Heather Cardona and Sarah Engler of Defendant "requesting a meeting to discuss [her] rights as an employee" as she felt she had "been discriminated against and harassed for religious beliefs" and wished to "report discrimination and harassment, and what can be done about the situation." *Id.* at 5 ¶ 8. Thereafter, Plaintiff spoke with Ms. Cardona via telephone, during which time Ms. Cardona told Plaintiff she would look into the situation and get back to Plaintiff. *Id.* On October 1, 2021, Ms. Cardona emailed Plaintiff stating that she cannot provide "any additional information" regarding Plaintiff's exemption denial and that there "is not an option to appeal this further." *Id.* On that same day, Defendant issued a Personnel Report to Plaintiff containing a "Final Warning" that she was in violation of Defendant's vaccination policy, and that if she was not "fully vaccinated" by November 12, 2021, her employment would be terminated. *Id.* at 5 ¶ 9. Plaintiff responded by reasserting that COVID-19 vaccination conflicted with her sincerely held religious beliefs. *Id.* Thereafter, Defendant sent Plaintiff a Personnel Report dated November 15, 2021, advising Plaintiff that her employment had been terminated. *Id.* at 6 ¶ 10.

Following her termination, on January 28, 2021, Plaintiff submitted a Charge of Discrimination to the Equal Employment Opportunity Commission ("EEOC") alleging that she was the victim of religious discrimination in contravention of Title VII. *Id.* at 6 ¶ 12. On September 9, 2022, the EEOC issued a Notice of Right to Sue to Plaintiff. *Id.* This case followed.

Plaintiff filed this action on December 8, 2022, alleging violations of Title VII and the PHRA under theories of "failure to accommodate," "disparate treatment," and "retaliation." *Id.* at 7–9. On May 5, 2023, Defendant filed a Motion to Dismiss arguing that Plaintiff's claims fail because her beliefs cannot be said to be religious in nature. ECF No. 9. Plaintiff filed an Opposition

in Response to Defendant's Motion on February 5, 2024.[2] ECF No. 11. The Court finds this Motion

appropriate for resolution without oral argument.[3] Fed. R. Civ. P. 78; Local Rule 7.1(f).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility

means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied*

*Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule

12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the

---

[2]    Under our local rules, "[u]nless the Court directs otherwise, any party opposing [a] motion shall serve a brief in opposition together with such answer or other response that may be appropriate within fourteen (14) days after service of the motion and supporting brief. . . . *In the absence of a timely response, the motion may be granted as uncontested except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law.*" Loc. R. Civ. P. 7.1(c) (emphasis added). Therefore, as Defendant filed its Motion to Dismiss on May 5, 2023, Plaintiff's response was due on May 19, 2023. However, on January 23, 2024, there was still no response or any activity on the docket since Defendant filed its Motion to Dismiss. Given that more than eight months had passed since Defendant filed its Motion, this Court was unsure if Plaintiff intended to continue prosecuting this case. Accordingly, this Court issued a rule to show cause as to why the case should not be dismissed by February 5, 2024. ECF No. 10. Plaintiff filed a timely response to this Court's Order, which indicated that "Plaintiff's counsel did not file [a] written opposition to the Motion . . . as the undersigned was confident that the Complaint complied with all applicable pleading requirements . . . but would have done so if the Court so required and directed, and set a briefing schedule." ECF No. 11 at 3.

[3]    Interestingly, even though Plaintiff's counsel states that no response was filed to the Motion to Dismiss because counsel was confident that the Complaint complied with all applicable pleading requirements, counsel now requests oral argument. ECF No. 11 at 1. The Court finds oral argument unnecessary.

light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See*

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948

F.2d 1402, 1408 (3d Cir. 1991)).

## III.   DISCUSSION

Title VII and the PHRA prohibit religious discrimination in employment.[4] Under these

laws, employees may assert different theories of religious discrimination. *Abramson v. William*

*Paterson College of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001). Here, Plaintiff alleges theories

of failure to accommodate and disparate treatment, along with a retaliation claim. The Court will

address each theory of liability in turn.

### A.  Failure to Accommodate

To establish a prima facie case of failure to accommodate, "the employee must show: (1)

she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her

employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting

requirement." *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (internal quotation marks

and citation omitted). "Plaintiffs are not required to establish each element to survive a motion to

dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery

will uncover proof of [their] claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465

(M.D. Pa. 2022) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016))

(internal quotation marks omitted). "In assessing whether a plaintiff has sufficiently pled a sincere

religious belief, the Third Circuit has held that 'the task of a court is to decide whether the beliefs

professed by a registrant are sincerely held and whether they are in [the believer's] own scheme of

things, religious." *McKinley v. Princeton Univ.*, No. 22-cv-5069, 2023 WL 8374486, at *2 (D.N.J.

---

[4]      "Claims under the PHRA are interpreted coextensively with Title VII claims." *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citation omitted).

Dec. 1, 2023) (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490–91 (3d Cir. 2017)) (internal quotation marks omitted). "Whether a belief is sincerely held is a question of fact." *Shields v. Main Line Hosps., Inc.*, No. 2:22-CV-03307, 2023 WL 7129953, at *3 (E.D. Pa. Oct. 27, 2023) (citing *United States v. Seeger*, 380 U.S. 163 (1965)). And whether a belief is religious "present(s) a most delicate question." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981) (citation omitted).

"While 'no court should inquire into the validity or plausibility of' a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, No. 22-cv-5598, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (quoting *Fallon*, 877 F.3d at 490). "'The notion that all of life's activities can be cloaked with religious significance' cannot transform an otherwise secular idea into a religious belief." *Maher v. Bayhealth Med. Ctr., Inc.*, No. 22-cv-1551, 2024 WL 406494, at *2 (D. Del. Feb. 2, 2024) (quoting *Africa*, 662 F.2d at 1035). "[T]he very concept of ordered liberty precludes allowing [a plaintiff], . . . a blanket privilege to make [their] own standards on matters of conduct in which society as a whole has important interests." *Africa*, 662 F.2d at 1031 (internal quotation marks and citation omitted). Thus, courts are required to differentiate "between those whose views [are] religious in nature and those whose views [are] 'essentially political, sociological, or philosophical.'" *Fallon*, 877 F.3d at 490 (citation omitted).

In determining whether an employee's beliefs are religious, the Third Circuit has routinely considered whether the beliefs (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) are "comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Brown v. Children's Hosp. of Phila.*, 794 Fed. App'x 226, 227

(3d Cir. 2020) (quoting *Fallon*, 877 F.3d at 491) (internal quotation marks omitted). As "to the first factor, beliefs address 'fundamental' and 'ultimate' questions when they 'consider and attempt to come to terms with what could best be described as ultimate questions—questions having to do with, among other things, life and death, right and wrong, good and evil.'" *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023) (quoting *Africa*, 662 F.2d at 1033). As to the second factor, for beliefs to be "comprehensive in nature," they "must consist of something more than a number of isolated, unconnected ideas." *Africa*, 662 F.2d 1035. Thus, it cannot be "generally confined to one question or one moral teaching; it has a broader scope. It lays claim to an ultimate and comprehensive 'truth.'" *Id.* (citation omitted). As to the final factor, "'in ascertaining whether a set of ideas should be classified as a religion,' courts look to 'any formal, external, or surface signs that may be analogized to accepted religions' such as 'formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions.'" *Blackwell*, 2023 WL 362392, at *5 (quoting *Malnak v. Yogi*, 592 F.2d 197, 209 (3d Cir. 1979)).

Here, as indicated in the factual background, Plaintiff's accommodation request details that Plaintiff believes her body is a "temple of His Holy Spirit" and that she "prayed about how to respond to the COVID-19 vaccination directive" and "the Holy Spirit has moved on [her] heart, and conscience that [she] must not accept the COVID-19 vaccines." ECF No. 1 at 22. This does not suffice to qualify as a religious belief under *Africa*. As to the first two *Africa* factors, Plaintiff has alleged she is a Christian, which is a comprehensive religion. But her opposition to the vaccine is not a part of a Christian's "comprehensive system of beliefs about fundamental or ultimate matters," rather, it is more "an isolated moral teaching." *Finkbeiner*, 623 F. Supp. 3d at 465–66

8

(quoting *Fallon*, 877 F.3d 492). Moreover, Plaintiff's view is not manifested in any formal or external signs. Thus, Plaintiff has not satisfied any of the *Africa* factors.

In fact, Plaintiff's assertions "amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted obligations.'" *Finkbeiner*, 623 F. Supp. 3d at 465 (quoting *Africa*, 662 F.2d at 1030–31). "Forcing Defendant to 'unfailingly respect' any decisions Plaintiff makes by 'pray[ing] and ask[ing] God for wisdom and guidance' would grant her the type of 'blanket privilege' that does not qualify as a religious belief under *Africa*." *Hand v. Bayhealth Medical Ctr., Inc.*, No. 22-cv-1548, 2024 WL 359245, at *5 (D. Del. Jan. 31, 2024) (quoting *Finkbeiner*, 623 F. Supp. 3d at 465) (additional citations omitted). As such, numerous other district courts considering similar religious discrimination cases involving the COVID vaccine have found such beliefs amount to blanket privileges that do not qualify as religious beliefs. *See, e.g.*, *Hand*, 2024 WL 359245, at *5 (granting motion to dismiss where plaintiff believed receiving the vaccine "would be going against God and the Holy Spirit's convictions); *Berna v. Bayhealth Medical Ctr., Inc.*, No. CV 23-945, 2024 WL 456420, at *5–6 (D. Del. Feb. 5, 2024) (granting motion to dismiss where plaintiff "pray[ed] on it"); *Harvey v. Bayhealth Medical Ctr., Inc.*, No. CV 23-945, 2024 WL 456498, at *4 (D. Del. Feb. 5, 2024) (granting motion to dismiss where Plaintiff "prayed about how to accept the COVID-19 vaccine" and believed "that accepting the vaccine would be a violation of [her] conscious and relationship with God."); *Lucky v. Landmark Med. of Michigan, P.C.*, No. 23-CV-11004, 2023 WL 7095085, at *7 (E.D. Mich. Oct. 26, 2023) (granting motion to dismiss where plaintiff was a "non-denominational Christian that seeks to make all decisions through prayer and that God instructed her through prayer not to receive the COVID-19 vaccine"). The Court agrees with these other district courts and finds Plaintiff's belief does not qualify as a religious belief.

Therefore, because the Court finds that Plaintiff has not alleged discrimination on the basis of a sincerely held religious belief, Plaintiff has not set forth a sufficient case of religious discrimination under Title VII or the PHRA. Accordingly, Plaintiff's failure to accommodate claim will be dismissed.

### B. Disparate Treatment

A plaintiff seeking to establish a prima facie case of discrimination under a disparate treatment theory of religious discrimination must show: (1) that she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference that her protected class was either a "motivating" or "determinative" factor in plaintiff's adverse employment action against her. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *see also Hand*, 2024 WL 359245, at *3 (quoting *Connelly*, 809 F.3d at 787–88). Because, as indicated above, Plaintiff has failed to plead a sincerely held religious belief, there is no evidence to support a disparate treatment claim. *See Blackwell*, 2023 WL 362392, at *9 n.8 ("Because Plaintiff's Complaint fails to plead that her suspension and termination was due to a sincerely held *religious* belief, Plaintiff's Complaint fails to plead a cause of action for religious discrimination under Title VII pursuant to any of" the three theories of liability: failure to accommodate, disparate treatment, and retaliation.). Additionally, Plaintiff's Complaint never mentions any other employees and Defendant's treatment of those employees' exemption requests. Thus, there are no facts to support a plausible claim for relief under this theory. Therefore, Plaintiff's disparate treatment claim will be dismissed.

### C. Retaliation

To assert a prima facie case of retaliation, a plaintiff must show: "(1) [that she engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous

with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (internal quotation marks and citations omitted). Here, Plaintiff has not sufficiently alleged a prima facie case of retaliation. "Where a plaintiff opposes COVID-19 mandates by an employer under Title VII and is terminated, failure to allege a sincerely held religious belief means the plaintiff fails to state a claim for religious discrimination . . . or retaliation." *See McKinley*, 2023 WL 8374486, at *5 (internal quotation marks and citation omitted). Thus, because Plaintiff's retaliation claim is predicated on her showing a sincerely held religious belief, Plaintiff's retaliation claim also fails. *See id.*; *see also Blackwell*, 2023 WL 362392, at *9 n.8.

The Court notes that Plaintiff argues that Defendant's failure to engage in an "interactive dialogue" with Plaintiff, indicates a retaliation cause of action. *See, e.g.*, ECF No. 11 at 16. In support of this argument, Plaintiff cites, without any explanation, *Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53 (2006) and *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998). The Court finds nothing in those cases to save this claim for Plaintiff.

Furthermore, "[w]hile engagement in an 'interactive process' through which an employer and employee will work together to find an appropriate reasonable accommodation, is a duty imposed by the Americans with Disabilities Act, a similar duty has not yet been imposed for Title VII religious accommodation claims." *Mullen v. AstraZeneca Pharms., LP*, No. CV 23-3903, 2023 WL 8651411, at *5 n.2 (E.D. Pa. Dec. 14, 2023) (citing *Miller v. Port Authority of New York & New Jersey*, 788 F. App'x 886, 890 n.19 (3d Cir. 2019)). Moreover, even if such a requirement did exist, Defendant was not required to help Plaintiff craft a satisfactory religious objection. *See Bube v. Aspirus Hosp., Inc.*, No. 22-cv-745, 2023 WL 6037655, at *5 (W.D. Wis. Sept. 15, 2023)

(finding employer "had no duty to help plaintiffs identify what their religious beliefs are"). Defendant gave Plaintiff the opportunity to explain why the vaccine was inconsistent with her religious beliefs. That was sufficient.

Accordingly, Plaintiff's retaliation claim will be dismissed.

### D. Amendment Would Be Futile

Given that the Court has found that Plaintiff's request did not adequately state a religious objection to Defendant's vaccination policy, amendment to the Complaint would be futile. *See Fallon*, 877 F.3d at 494 (finding that the district court did not abuse its discretion in dismissing plaintiff's claims with prejudice because he had "not proposed any amendments that would cure the fundamental deficiency in his claims—that his anti-vaccination beliefs are not religious in nature" and "it does not appear that he could do so."). Accordingly, Plaintiff's Complaint will be dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 9) will be granted and Plaintiff's Complaint will be dismissed with prejudice. An appropriate Order will follow.

BY THE COURT:

HON. KAI N. SCOTT
United States District Court Judge